**SAN ANTONIO INDEPENDENT SCHOOL DIST. et al. v. STATE ex rel. DECHMAN et al. (No. 5435.) †**

(Court of Civil Appeals of Texas. San Antonio. Feb. 17, 1915. Rehearing Denied Feb. 19, 1915.)

**1. STATUTES ⬅194 — CONSTRUCTION—EJUSDEM GENERIS.**

General words following an enumeration of persons or things by words of a particular and specific meaning are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same kind or class as those specifically mentioned.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 272; Dec. Dig. ⬅194.]

**2. CONSTITUTIONAL LAW ⬅13—CONSTRUCTION OF CONSTITUTION—INTENTION.**

A state Constitution should not receive a technical construction like a statute, but a construction which carries out the apparent intention of the people who enacted it.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 9, 10; Dec. Dig. ⬅13.]

**3. CONSTITUTIONAL LAW ⬅16—CONSTRUCTION OF CONSTITUTION—PRIOR STATE OF LAW.**

Where ambiguity exists in the language of a constitutional provision, not removable by reference to the other provisions, the prior state of the law, the evil to be remedied, and the contemporaneous circumstances are to be resorted to to determine its meaning and import.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 12, 16; Dec. Dig. ⬅16.]

**4. SCHOOLS AND SCHOOL DISTRICTS ⬅46—TERM OF OFFICERS—CONSTITUTIONAL PROVISIONS—"STATE BOARD"—"STATE OFFICER."**

Const. art. 16, § 30, provides that the duration of all offices not fixed by the Constitution shall not exceed two years, and article 30a, added in 1912, provides "that the Legislature may provide by law that the members of the board of regents of the state university and the boards of trustees or managers of the educational, eleemosynary and penal institutions of the state and such boards as had been, or may hereafter be established by law, may hold their respective offices for the term of six years, one-third of the members of such boards to be elected or appointed every two years." Act 1909 (Loc. & Sp. Acts 31st Leg. c. 84), creating the San Antonio independent school district to have the management of all the schools in the city, as amended by Act March 26, 1913 (Loc. & Sp. Acts 33d Leg. c. 93), §§ 2, 3, provides for the election in April, 1913, of nine trustees, three of them to hold office for six years, three for four years, and three for two years, with an election of three trustees every two years, and for notice, holding, and returns of elections. *Held,* the members were not "state officers" or members of a "state board," and that, as the enumerated boards were all state boards or boards of the state, the rule of ejusdem generis rejected any boards except those of the same general class, and hence that the part of the act increasing the tenure of office to more than two years was unconstitutional.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 92; Dec. Dig. ⬅46.

For other definitions, see Words and Phrases, First and Second Series, State Officer.]

**5. STATUTES ⬅64 — PARTIAL INVALIDITY — EFFECT.**

Such partial unconstitutionality did not render the whole act unconstitutional, since the act, consisting of 28 sections, provided by section 2 for the election of nine trustees in April, 1913, and for notices, holding, and returns of election, etc., so that the method of election was fully prescribed by other parts of the act, and the only effect of the partial unconstitutionality was to cause the election of a full board every two years instead of a part of the board each two years.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66, 195; Dec. Dig. ⬅64.]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Quo warranto by the State of Texas, on relation of T. M. Dechman and others, against the San Antonio Independent School District and others. Judgment for relators, and defendants appeal. Affirmed.

Denman, Franklin & McGown and Arnold, Cozby & Peyton, all of San Antonio, for appellants. W. C. Linden, Swearingen & Ward, and John H. Bichett, Jr., all of San Antonio, for appellees.

FLY, C. J. This is a suit in the nature of a quo warranto brought by the state of Texas, upon the relation of T. M. Dechman, Charles Florian, and J. F. Fentiman, against Dr. F. Terrell, S. L. Harris, C. A. Goeth, S. G. Bechtel, W. D. Hood, Albin Seidel, Mrs. M. J. Bliem, Mrs. Rena Maverick Green, and Mrs. Eli Hertzberg, to oust them from the office of trustees of San Antonio independent school district. The information is quite voluminous, alleging, in substance, that by the act of the Legislature of 1909 (Loc. & Sp. Acts 31st Leg. c. 84) the San Antonio independent school district was created and given the management and control of all the schools within the corporate limits of the city of San Antonio; that on March 26, 1913 (Loc. & Sp. Acts 33d Leg. c. 93), the act of 1909 was amended so as to have nine trustees instead of seven to compose the San Antonio school board; that in said amendment it was provided that nine trustees should be elected in April, 1913, that three of the trustees should hold office for six years, three for four years, and three for two years, that they should determine by lot the terms of the members, and that every two years an election should be held for three trustees whose terms should be six years. It was alleged that the act was null and void because of the terms of the trustees being fixed at six years instead of two years, as provided in article 16, § 30, of the state Constitution, and that the same is unconstitutional because its caption is not such as is required by the Constitution; that on April 8, 1913, an election was held for nine trustees as provided in said act, and F. Terrell, S. L. Harris, C. A. Goeth, S. H. Bechtel, E. G. Le Sturgeon, Albin Siedel, Mrs. Eli Hertzberg, Mrs. M. J. Bliem, and Mrs. Atlee B. Ayers were elected and ousted

the relators from the office of trustees held by them under the old law and took possession of the public free schools of San Antonio; that Le Sturgeon resigned and W. D. Hood was chosen in his place, and Mrs. Ayers resigned and Mrs. Green was chosen in her place. The defendants demurred generally, and specially denied that they were holding the office illegally, but by provision of a valid act passed by the Legislature and by virtue of their election to the same. The court rendered judgment to the effect that the act of 1913 is null and void in so far as it seeks to provide terms of six years for the trustees, but that the other portions of the statute are valid and binding, and that the nine trustees are entitled to hold their respective officers for two years from the second Tuesday in April, 1913, and that on the second Tuesday in April, 1915, an election should be held as provided for in the act of March 26, 1913, for the election of nine trustees, six men and three women.

The act referred to provides, in the first section for the creation of the San Antonio independent school district, and the first paragraph of the second section provides:

"From and after the passage of this act, said San Antonio independent school district shall be under the control of nine trustees, who shall be called the San Antonio school board. On the second Tuesday in April, 1913, an election shall be held by the qualified voters of said district for the purpose of electing nine trustees."

In the second paragraph of the second section provision is made for three of the trustees to hold office for six years, three for four years and three for two years; the three for each term so fixed to be determined by lot. Provision is made for an election every two years, but for only three trustees. The third paragraph of the second section provides for notices of elections, and for the manner of holding the elections and making returns thereof. The third section of the act fixes the qualifications of trustees, and provides that not more than three women shall be eligible to election as members of the board, not more than one woman to be chosen at any election after first. It also provides that men living in the suburbs of San Antonio who are taxpayers therein shall be eligible as trustees, and also for the oath to be taken by trustees. The other portions of the act need not be considered, as all of the act that is attacked is contained in the second and third sections and relates to the terms of office prescribed for trustees.

Original section 30, art. 16, of the state Constitution, provides:

"The duration of all offices not fixed by this Constitution shall never exceed two years."

In 1894 the section was amended so as to give six-year terms to railroad commissioners. In 1912, by a vote of the people of Texas, section 30a was added to the Constitution. That section provides:

"The Legislature may provide by law that the members of the board of regents of the state university and boards of trustees or managers of the educational, eleemosynary and penal institutions of the state, and such boards as have been, or may hereafter be established by law, may hold their respective offices for the term of six years, one-third of the members of such boards to be elected or appointed every two years in such manner as the Legislature may determine; vacancies in such offices to be filled as may be provided by law, and the Legislature shall enact suitable laws to give effect to this section."

[1] It is the contention of the school board of San Antonio that the language, "such boards as have been or May hereafter be established by law," is broad enough to include any board, state, county, or municipal in the state, and, if that construction can be reasonably placed on the language, the school board of San Antonio is within its contemplation and purpose. However, there is a rule of construction as to constitutional and legislative provisions, known as the rule of ejusdem generis, which, we think, can with peculiar aptitude be applied to the section of the Constitution in question. The ejusdem generis rule is that, where general words follow an enumeration of persons or things by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same kind or class as those specifically mentioned. Black's Law Dic.; Cutshaw v. Denver, 19 Colo. App. 341, 75 Pac. 22; Spalding v. People, 172 Ill. 40, 49 N. E. 993. The boards enumerated in the Constitution are clearly all state boards, or boards of the state, which, we deem, for the purposes of a consideration of the question involved, are the same thing, and, if the rule of ejusdem generis is applied, it would reject any boards except those of the same general class, rank, or grade with those enumerated. As said in a quotation, made and approved by the Texas Supreme Court in National Bank v. Hanks, 104 Tex. 320, 137 S. W. 1120, Ann. Cas. 1914B, 368:

"The words 'other' or 'any other,' following an enumeration of particular classes, are therefore to be read as 'other such like,' and to include only others of like kind or character."

If the Legislature in preparing the constitutional amendment had intended all boards elected or appointed, whether state, county, or municipal, no mention would have been made of certain state boards; but the amendment would have been formulated so as to have included public boards of every description. But the amendment enumerates the board of regents of the state university and boards of trustees or managers of the educational, eleemosynary, and penal institutions of the state, and then includes all other such boards as have been or may be appointed or elected. If all the state boards had been enumerated or had been included among boards of the institutions named, then it

must be argued with some force that all public boards were included; but there are numbers of boards other than those connected with the educational, eleemosynary, and penal institutions of the state.

"It is a principal of statutory construction everywhere recognized and acted upon, not only with respect to penal statutes, but to those affecting only civil rights and duties, that where words particularly designating specific acts or things are followed by and associated with words of general import, comprehensively designating acts or things, the latter are generally to be regarded as comprehending only matters of the same kind or class * * * particularly stated." Ex parte Muckenfuss, 52 Tex. Cr. R. 467, 107 S. W. 1131.

[2, 3] We do not lose sight of the fact that we are construing a constitutional and not a legislative provision, and that a state Constitution should not receive a technical construction like a statute; but that rule of interpretation should be followed which carries out the apparent intention of the people who enacted it. But if an ambiguity exists in the language of a constitutional provision, which cannot be removed by consulting other parts of the Constitution, then the prior state of the law, the evil to be remedied, and the circumstances of contemporaneous history are to be resorted to to determine its meaning and import. It is well known in this state that with each succeeding administration in the state of Texas for the last 40 years, although each was of the same political faith as the other, the doctrine that "to the victor belongs the spoils" has been rigidly applied, and, no matter how faithfully and ably the affairs of the different state institutions may have been conducted by the different boards, the members of them went out with the retiring Governor and with them their appointees, and new men who merited reward for political service were rewarded. The result was that, just as boards had become acquainted with the duties of their positions and their appointees had been trained so as to give the proper service to the state, a new administration was ushered in with its raw appointees, and the educating and training was begun again. The state suffered from poor service, and, worse than all, the unfortunates in asylums and the inmates of reformatories and prisons bore the burdens of inefficiency and inexperience of the raw recruits who were summoned to take charge of the institutions. No matter how competent, faithful, and efficient the boards and the superintendents might be, vacancies must be made for henchmen, and the game of politics merrily go on. The people of Texas became tired of this condition, and sought to destroy it by having an amendment submitted by which the boards would have a longer tenure of office than the Governor who might appoint them, so that they would continue their appointees in office. So the amendment of 1911 was submitted to the people and adopted by them in November, 1912. Whether the amendment will accomplish the desired ends, or not, is not the question; reformation in the institutions of the state was the reason for its submission by the Legislature and its adoption by the people. There were no such complaints as to boards of trustees of the free schools of the state. They were elected by the people and were dependent on no one but the voters of the country for their tenure of office. The general policy is to elect officers for only two years, and, except in the case of judges, senators, university regents, and the railroad commission, that policy had not been disturbed until the amendment of 1911 was submitted to and adopted by the people. The policy was then disturbed only to destroy the spoils system in connection with the boards of our educational, eleemosynary, and penal institutions and the boards of other agencies of the state government. If the policy of two-year terms fixed by the Constitution is reasonable and proper, there could be no ground for extending the terms of office of school boards from two to six years. If other officers should be required every two years to give an account of their stewardship to the electorate of the state, the same strong reason would exist for school trustees, who have in their charge the future citizenship of the commonwealth, to render an account of their administration of the affairs of the schools every two years. If there was any demand as to a change in their tenure of office, no record of it appears in the recent history of our state.

But it is said that the Legislature of Texas placed its construction upon the amendment to the Constitution by providing that the members of the San Antonio school board should hold their offices for six years. If the same Legislature that prepared and submitted the amendment had construed it, there might be some force in the argument; but it was done by a different Legislature, the members of which were no better qualified to construe the Constitution than any other body of men selected at haphazard throughout the state. The act in question is a local law, doubtless prepared in the city of San Antonio, and passed, as most local laws are, at the request of local representatives, and without reference to the Constitution. The fact that provision is made in the act for persons living without the city to be eligible to election as trustees bears internal evidence that it was prepared in San Antonio. But if the construction of the amendment by the Legislature of 1913 should be given weight, then we find that it passed a general law, which undoubtedly was given closer scrutiny and attention than a local law, in which provision was made for six-year terms for state boards only, without mention of county or city school boards.

We cannot agree to the proposition that the members of the San Antonio school board are state officers or members of a state board, and we conclude that section 30a has no application to any but state boards. To hold that school boards of a district or county are

institutions of the state would be to break down any distinction between state and county or precinct officers, for all of them are in one sense officers of the state, because they live and hold their offices in the state. Every board and every officer, from a justice of the peace or constable to the Governor, is to some extent an agent of the state in enforcing its laws, and executing its purposes; but they are not all officers of the state. The words "institutions of the state" were doubtless used in their common acceptation, and that is the construction placed upon the words by the Legislature of 1913 when the general law was passed that put the amendment into effect. The circumstances indicate that the words "institutions of the state" were used as synonymous with "state institutions" and were not intended to embrace every board connected with education, charity, or punishment for crime in the state. The county judge, while acting in the capacity of county school superintendent, may be, as held in Webb County v. School Trustees, 95 Tex. 131, 65 S. W. 878, "in fact the officer and agent of the state" on the ground stated in the opinion that he is acting for the state and not the county in disbursing school funds; but that opinion cannot be authority for holding that the school board of a city, that is not acting as a disbursing agent for the state, but as the representatives of the people who elected them, is a state board. The San Antonio school board is given absolute control of the schools of the city and the disbursement of the school fund, a large portion of which does not come from the state, but is collected by taxation of the people of the city. The board is not an agent and officer of the state, but of the people who elected them. The state has no supervisory control over the San Antonio school board, but it is an independent agency of the people of San Antonio. It is a city school board pure and simple. No doubt, county schools "are institutions of the state established in the counties," as held in Delta County v. Blackburn, 100 Tex. 57, 93 S. W. 419; but in the case of the chartered independent school district the state surrenders all control over the schools therein and the money belonging thereto, and the school board is responsible to the electors in such school district alone. It is not an institution of the state in the sense in which those descriptive words are used in the 1912 amendment to the Constitution.

[4] It is argued that, if only state boards were meant, the Legislature would have used the words "such state boards"; but, on the other hand, it seems more reasonable to conclude, after specially mentioning certain state boards, that, if other boards than state boards were included, they should have been mentioned. That no other than state boards were intended, we think, appears from the journal of the State Senate of 1911. The amendment known as section 30a originated in the House, and was passed without discus-

sion, and when it reached the Senate we find that on March 10, 1911, the following proceedings were had:

"Senator Meachum offered the following amendment: 'Amend House Joint Resolution No. 9 by inserting after the words, "penal institutions of the state," in section 1 of the printed resolution, the words: Boards of school trustees in counties, cities and in independent and common school districts, the members of boards of city commissioners, boards of aldermen and other governing boards of cities, which have been or may hereafter be established by law.' On motion of Senator Watson the amendment was tabled."

The Senate must have acted with the desire to refuse extension of the increased tenure of office to the boards named in the amendment, and not on the hypothesis that the original resolution included those named in the amendment; for if the resolution of the House is so obscure and ambiguous as to cause a succeeding Legislature to pass the act of 1913 in regard to the school board in question, such obscurity would have been apparent to the Senate, and the effort to amend it would not have been so summarily disposed of. If the Senate of Texas had felt disposed to include all boards whether state or otherwise in the constitutional amendment it would never have permitted an opportunity to pass to make the amendment so clear on that subject that judicial construction would never have been necessary.

There was nothing in the amendment to the Constitution that could not be provided for by a general law, even though every board in the state had been included in the amendment, and it was not necessary to place the term of office of the school board of San Antonio in the act which constituted that board. Even if the judgment of the Legislature was that the objects of the amendment could not be attained except by the passage of the local law and that judgment was conclusive on that point, as is held in Beyman v. Black, 47 Tex. 558, it is not conclusive on what is included in the amendment, and in the final analysis the judgment of courts must be obtained.

The rules to be followed in the construction of a constitutional provision, collated by the San Antonio school board, are wise and salutary, and this court has endeavored to follow each of them in construing the constitutional amendment in question. In other words, we have sought to construe it so as to give the act of the Legislature the benefit of any doubts; we have construed the amendment in view of the fact that voters are usually unlearned in the law and have given the words of the amendment their ordinary signification; we have sought, in the light of the evils to be removed and the good to be accomplished, to arrive at the intention of the Legislature, and in the light of the construction placed upon the amendment by the Legislature in the passage of general laws, and we have also consulted the journals of the Legislature to ascertain the mind and intent.

of the Legislature at the time the joint resolution was passed. Applying all these rules, we are forced to the conclusion that the Constitution has not increased the tenure of office of school boards of independent school districts.

[5] Holding that the part of the local act of 1913, constituting the school board of San Antonio, is unconstitutional in so far as it endeavors to increase the tenure of office to more than two years, does not necessarily carry with it the decision that the whole act is unconstitutional and void, for where part of a statute is unconstitutional and the remainder is constitutional, if the two parts can be possibly separated courts should do so, and not permit the invalid part to destroy the whole law. If, after the elimination of the invalid part of the law, there remains an intelligible and valid statute capable of being placed in execution and conforming to the general purpose and intent of the Legislature, the law will not be destroyed, but held to be valid and binding except as to the excised part. Presser v. Illinois, 116 U. S. 252, 6 Sup. Ct. 580, 29 L. Ed. 615; Willcox v. Consolidated Gas Co., 212 U. S. 54, 29 Sup. Ct. 192, 53 L. Ed. 382, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034. As said by Judge Cooley:

"Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the Legislature would have passed the one without the other. The constitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall." Cooley Const. Lim. §§ 177, 178.

That doctrine is always recognized by all courts.

Let the rules be applied to this case: The act creating the San Antonio independent school district consists of 27 sections, providing for the creation of a school board of nine trustees, six men and three women, and defining their powers, duties, liabilities, and responsibilities. The only portion of that lengthy act that is attacked for unconstitutionality is the second paragraph of section 2, relating to the tenure of office. Section 2 is as follows:

"Sec. 2. From and after the passage of this act, said San Antonio independent school district shall be under the management and control of nine trustees, who shall be called the San Antonio school board. On the second Tuesday in April, 1913, an election shall be held by the qualified voters of said district for the purpose of electing nine trustees. Three of said trustees elected in April, 1913, shall hold their terms of office for six years and until their successors are elected and qualified, and three of said trustees elected in April, 1913, shall hold their offices for the term of four years and three of said trustees elected in April, 1913, shall hold their offices for the term of two years. When elected, said nine trustees elected in April, 1913, shall determine by lot among themselves which three shall hold their terms of office for six years, and which three of them shall hold their terms of office for four years, and which three of them shall hold their offices for two years. Every two years an election shall be held by the qualified voters in said independent school district for the purpose of electing three trustees and the terms of said trustees, when elected, shall be six years and until their successors shall have been elected and shall have qualified. Notice of all elections for the purpose of electing school trustees shall be given by the president of the San Antonio school board, and said notice shall be given by publishing the same once in two regularly published newspapers in the English language in said district; and said notices shall be published not less than ten days nor more than thirty days before the date of said elections. All elections shall be held in accordance with the state law governing elections, except that said board shall fix one or more voting places in each ward in said city of San Antonio, and said board shall appoint a presiding officer to hold said election at each voting place, and said presiding officer shall select at least one judge and two clerks for the respective voting places; and said presiding officer, judges and clerks shall act as managers of said election, and shall take the oath prescribed by law as in general elections under the state law, and make returns of said elections to said board, as required by law at general elections, and, within five days thereafter, said school board shall canvass such returns, declare the results thereof, and issue certificates of election to the persons shown by said returns to have been elected."

It will be seen that paragraph 1 of the section makes full provision for the election of nine trustees on the second Tuesday of April, 1913, and the third paragraph provides for notices of election, the manner of holding and making returns of the same, the canvass of the returns, declaration of the results thereof, and the issue of certificates of election. The elimination of the invalid paragraph in no wise interferes with the orderly election of the nine trustees, and the administration of the affairs of the school district as set out in the act. It strikes down nothing but the tenure of office and relegates us to the Constitution to determine the tenure of office. We cannot presume that the Legislature would not have passed the act if the tenure of office of the trustees had not been extended to six years. On the other hand, it may be presumed that the extension of the privilege of being members of the board to the women of the city, as well as the increase in the membership thereof, would have been sufficient incentive for the passage. No other portion of the law is dependent on the second paragraph of section 2, and that paragraph can be removed without marring the perfection of the bill. The only effect of the removal is to cause the election of a full board every two years. The board was duly and constitutionally elected on the second Tuesday in April, 1913, as provided by law, and form the de jure San Antonio school board until the expiration of their constitutional term of two years, or when their successors are duly elected and qualified. The manner, means, and machinery of the election are fully prescribed in the valid parts of the act, and there is

nothing to cast a cloud upon the due and constitutional election of the trustees. The law is capable of being executed fully and satisfactorily to carry out the main legislative intent without the aid of the invalid paragraph.

The opinion in the case of Kimbrough v. Barnett, 93 Tex. 301, 55 S. W. 120, holding that the act of 1899 (Acts 26th Leg. c. 51) was invalidated by the clause which increased the tenure of office of the trustees, is based upon the hypothesis that the Legislature would not have passed the law except to obtain an increase in the length of terms of school trustees. That supposition—for it can be nothing but a judicial hypothesis—is based, we suppose, upon the fact that the only material difference between the former act and that of 1899 was in regard to tenure of office. The opinion on the point declaring that the invalidity of one part of the act destroyed the whole is quite unsatisfactory, no reasons being given for the statement that the law would not have been passed without the increased tenure clause.

The opinion in the case of Rowan v. King (Sup.) 55 S. W. 123[1], was written by the same judge who wrote the opinion in the Kimbrough Case, and we can readily understand that the part of the law increasing the tenure of office beyond the constitutional limit would completely destroy an act which had no other purpose than to provide for the election of trustees. The court said:

"Without the void portion the act would have no value, and we conclude that the Legislature would not have so framed it."

Of course, if the invalid part of the law destroys its value, the whole act fails. In the case under consideration, the usefulness of the act is not destroyed or impaired, and we have the right to indulge in the presumption that the act would have been passed although there had been no increased tenure of office. The last act was materially different from preceding acts, in that it provided that women should be members of the board, and that the board should be composed of nine members instead of seven, besides other changes. Knowing, as we do, of the agitation of the question of equal political rights of women with those of men, we could reasonably presume that this agitation was behind the proposition to have a new law, and that the main object of the law was to place three women upon the board. The power propelling the enactment of the law to place women on the board was sufficient to have procured the enactment of the law if tenure of office had not been mentioned in it. No reason can be offered why the Legislature would not have passed the local act without the obnoxious clause as to office tenure. The leading object was to place the management and control of the schools of San Antonio in the

hands of nine trustees, three of whom should be women, and the tenure of office was a mere incident to the enactment of the law. Ex parte Henson, 49 Tex. Cr. R. 177, 90 S. W. 874. If the law is to be destroyed, the schools of San Antonio demoralized, and inextricable confusion created, upon the mere theory that the Legislature would not have enacted the law without the tenure of office clause, some other governmental agency than this court must be called upon to do it. It has been doubted that courts have the power and authority to destroy a law enacted by another branch of the government; but, conceding that right to the courts, every reasonable doubt should be indulged in favor of the validity of a statute, and the whole should not be destroyed on merely a presumption that the law would not have been passed had the invalid part been left out. As said by the Supreme Court of the United States in the Presser Case, hereinbefore cited:

"It is a settled rule that statutes that are constitutional in part only will be upheld so far as they are not in conflict with the Constitution, provided the allowed and prohibited parts are separable."

That is the reasonable rule in regard to the matter.

Suppose we eliminate the second paragraph of the local statute, we still have a valid law that can be executed; for, in the absence of the tenure of office being fixed, the Constitution would fix the term of office, and nothing would be absent that was essentially necessary. The law would then read:

"Sec. 2. From and after the passage of this act, said San Antonio independent school district shall be under the management and control of nine trustees who shall be called the San Antonio school board. On the second Tuesday in April, 1913, an election shall be held by the qualified voters of said district for the purpose of electing nine trustees. Notice of all elections for the purpose of electing school trustees shall be given by the president of the San Antonio school board," etc.

The law would be perfectly intelligible and capable of execution.

In section 3 there is the provision that "no more than one woman to be chosen at any particular election after the first election herein provided for, when three may be elected," and, it being to all intents and purposes a part of the tenure of office paragraph and inseparably connected with it, must fall with it. One of the chief objects of the act was to give a representation of three women on the board, and that object should not meet with interference.

In the act of 1909, a business agent was provided for at a fixed salary of $2,000. In the act of 1913, the board was authorized to appoint a business agent and fix his salary, and it is required that he be an expert accountant. In the act of 1913, the power of eminent domain, not granted before, was given to the board, and their qualifications were changed from freeholders to property taxpayers. The board, in the act of 1913, was

---

[1] Reported in full in the Southwestern Reporter; reported as a memorandum decision without opinion in 94 Tex. 650.

given the additional authority to issue teachers' certificates. All these changes were made in addition to increasing the number of trustees to nine and providing for three women to be members, and that persons living outside the city might be members of the board. These changes and additions indicate that the tenure of office of the members was not the controlling factor in the passage of the act, and that it would no doubt have been enacted if that feature had never been a part of it. The Legislature would undoubtedly have passed the law whether the parties who drew the charter in San Antonio would have presented it in that shape or not.

The judgment is affirmed.

CARL, J., entered his qualification to sit in this case.