FARMERS' & MECHANICS' NATIONAL BANK v. W. T. HANKS ET AL.

No. 2172.   Decided May 31, 1911.

**1.—Statutory Construction—Acts in Derogation of Common Law.**

Though statutes in derogation of the Common Law, such as those giving an action for injuries resulting in death, are to be liberally rather than strictly construed in this State (Revised Statutes, General Provisions, art. 2) where an action rests wholly upon statute the right must be found in the statute itself, fairly construed, and in the ordinary meaning of its language, where it has not acquired a technical signification in relation to the subject.   (P. 325.)

**2.—Statutory Construction—Particular Words Followed by General.**

Where general words in a statute follow a designation of particular subjects

or classes of persons, the meaning of the general words will be restricted by the particular designation. (Pp. 326, 327.)

### 3.—Death—Negligence of Servant—Operation of Elevator.

Proprietors of buildings operating passenger elevators therein are held to a high degree of care for the safety of those using them, but are not common carriers; nor does the statute rendering proprietors of railways, steamboats, etc. liable for death caused by the negligence of their servants (Rev. Stats., art. 3017) impose such liability upon common carriers as such. (Pp. 327-329.)

### 4.—Same—Vehicle for Conveyance.

The general words of the statute (Rev. Stats., art. 3017) "other vehicle for the conveyance of passengers" are limited in their application to vehicles of a similar class to those before specifically enumerated "railroad, steamboat, stage coach" and include only agencies transporting from some point of origin to some more or less distant destination. A passenger elevator in a building does not come within the terms of the statute. (P. 328.)

### 5.—Same.

The proprietor of an office building operating an elevator for passengers between the different floors was not liable under the statute (Rev. Stats., art. 3017) for the death, by the negligence of his servant running such elevator, of a workman employed under a subcontractor making repairs upon the building and struck by the elevator while working partly inside the elevator shaft. (Pp. 322-329.)

Error to the Court of Civil Appeals, Sixth District, in an appeal from Tarrant County.

Hanks and wife brought suit against the F. & M. National Bank to recover damages for the death of their son, and recovered judgment. Defendant appealed, and on affirmance, obtained writ of error. The opinion of the Appellate Court is reported in 61 Texas Civ. App., 379.

*Lassiter & Harrison* and *Harris & Harris,* for plaintiff in error.— Under the undisputed evidence, the negligence, if any, in this case was that of a servant of the plaintiff in error, as distinguished from that of the plaintiff in error itself. There is no right of recovery against the plaintiff in error for a death resulting in that way, and the defendants in error are not entitled to recover in this case. Halbert v. Texas Tie Co., 107 S. W., 592; Ott v. Johnson, 101 S. W., 534; Asher v. Cable, 1 U. S. C. C. A., 703; Griffin v. Mannese, 166 N. Y., 166; Burgess v. Stowe, 96 N. W., 99; Seaver v. Bradley, 69 N. E., 795; Lipscomb v. Railway Co., 95 Texas, 5; Railway v. Freeman, 97 Texas, 394; Williams v. Northern T. Trac. Co., 107 S. W., 125; Fisher v. Texas Telephone Co., 79 S. W., 50; 36 Cyc., 1119; Monongahela Bridge Co. v. Railway Co., 114 Pa., 478; Allen's Appeal, 81 Pa. St., 302.

*B. D. Shropshire* and *McLean & Carlock,* for defendants in error Hanks and wife.—An elevator car in an office building such as is shown by the evidence in this case, habitually used for the transportation of passengers, comes within the meaning of the term "other vehicle for the conveyance of goods or passengers" in the first section of article 3017 of the Revised Statutes, and where it is shown that death has resulted to a human being by reason of the negligence of the agent of the owner of the said elevator car, damages are recoverable under the said statute.

Sayles' Statutes, art. 3017; Kirby, Receiver, v. Owens, 120 S. W., 936; Cunningham v. Neal, 107 S. W., 539; 1 Thompson, Negligence, sec. 1078; Mitchell v. Marker, 25 L. R. A., 33; Treadwell v. Whittier, 80 Calif., 574, 5 L. R. A., 498; Goodsell v. Taylor, 4 L. R. A., 673; Southern Bldg. Assn. v. Lawson, 37 S. W., 87; Kentucky Hotel Co. v. Camp, 97 Ky., 424; Ray on Negligence, 308.

We cite the following authorities in support of the proposition that passenger elevators are common carriers, and subject to the same rules of law as are other carriers of passengers. Treadwell v. Whittier, 80 Cal., 595, 5 L. R. A., 498, 13 Am. St,. 175; Goodsell v. Taylor, 41 Minn., 207; McDonough v. Lanpher, 55 Minn., 503, 43 Am. St. Rep., 541; Luckel v. Century Building Co., 177 Mo., 608; Wise v. Ackerman, 76 Md., 375; Springer v. Schultz, 205 Ill., 144; Gibson v. International Trust Co., 177 Mass., 100; Morgan v. Saks (Ala.), 38 So., 848; Mitchell v. Marker, 25 L. R. A., 33; Hartford Deposit Co. v. Sollitt, 172 Ill., 222, 64 Am. St., 35; Kentucky Hotel Co. v. Camp, 97 Ky., 424; Lee v. Publishers Knapp Co., 155 Mo., 610; Southern Bldg. Assn. v. Lawson, 97 Texas, 367, 56 Am. St., 504; Fox v. Philadelphia, 208 Pa., 127, 65 L. R. A., 214; Russo v. Morris Bldg., etc., Co., 104 La., 438; Oberfelder v. Doran, 26 Neb., 118, 18 Am. St., 771; Webb on Elevators, sec. 4, page 4; also pages 6 to 18 and authorities therein cited.

*Capps, Cantey, Hanger & Short,* for defendant in error Bardon.

MR. JUSTICE RAMSEY delivered the opinion of the court.

The facts out of which this litigation arose are thus stated by the Court of Civil Appeals for the Sixth Supreme Judicial District:

"Between 10 and 11 o'clock of the morning of October 15, 1906, while S. B. Hanks, aged about 22 years, and son of appellees Hanks, was engaged in the work of plastering in the elevator shaft, he was killed by the descending elevator car being operated by appellant's employee in charge and control thereof. The appellant was the owner of a six story office building in the city of Fort Worth, known as the 'Hoxie Building,' and tenanted by a great many different people. Appellant constructed and owned and operated a passenger elevator therein to carry persons vertically from one story in the building to another, which was used for the transportation of passengers generally. All persons having business had the right and did commonly use the same. The building is one of the most public places in the city, and the elevator was used by hundreds of people daily. It was proved that it was advantageous to the owners of the building in renting the building, as it would not be possible to rent the upper stories advantageously without the use of an elevator. The elevator car was about 6 x 6 feet square and between 10 and 12 feet high, and accommodated several people, and weighed about a ton. The elevator car is run by electricity, and works inside a shaft about 6 x 6 feet square extending from the lower floor of the building upward to the top floor of the building. The movement of the elevator car is controlled by means of a handle that comes out of the top of the controller box; and by turning it one way the car ascends, and by turning it another way the car descends. For the purpose of running the car the appellant placed Willie Page in

charge and control thereof, and he was charged with the duties of running and operating the elevator car and had sole charge and control for such purposes from 7 o'clock in the morning until 7 o'clock in the evening except during the noon hour of the day, when the elevator was under the control of the electrician of the building. No other person but Page ran and operated the car during the day except at the noon hour. Appellant had entered into a written contract with John Bardon to make certain repairs on the building, and he had a sub-contract with Kuhlman covering the plastering to be done. A part of the plastering in the elevator shaft had fallen out, and Kuhlman had employed deceased to replaster the place where it had fallen out, and at the time of the injury in suit deceased was at the work of replastering in the shaft. In order to do this work it was necessary for deceased to lean his body over inside the elevator shaft, and this would place him in the path and way of the elevator car if descending. The place where the work was to be done was about a foot below the line of the floor, and the work could have been finished in about fifteen minutes by stopping the running of the elevator so as to be uninterrupted. The elevator car was not stopped from running, but continued to be operated at and during the time the work was being done by deceased. The appellant's servant in charge of the elevator and operating same testified that he knew that deceased was working in the shaft on the second floor, and 'before going to work there that day Mr. Hanks either asked me to or I told him that I would—I can not say which—but I agreed to call out to him as I went up and came down. I can not state whether he asked me to or whether I told him I would. The purpose of my calling out to him was to let him know that I was near him in time to give him time to get out of the way. I just called out to him to let him know that I was coming.' Hanks, the deceased, in doing the work of plastering was lying on his stomach, and had to reach over with one arm down in the shaft, and that threw his head and part of his shoulders inside the shaft. The employee operating the elevator testified: 'After I made this arrangement with Mr. Hanks, by which I was to call out to him, I think I passed him about twelve times carrying passengers up and down, and on each of these occasions I called out to him in plenty of time for him to get out of the way. I knew he was working in there and that if I did not give him the signal and notify him he was liable to be hurt.' He further testified: 'I am not sure where I had started from just before the accident occurred, but I think I left the top floor and came down without a stop. When I left the top floor I had some passengers in the car, four if I am not mistaken. I did not give to Mr. Hanks any notification that I was coming down on the last trip that I made. I knew at the time that he was at work underneath the car. I don't know how it was that I came not to notify him.' He testified positively both on direct and cross-examination that before descending with the elevator just before the injury to the deceased, he gave no warning to deceased that he was about to descend with the elevator. That no warning was given by the operator of the elevator before deceased was struck is testified to by two of the passengers in the elevator at the time. The speed of the elevator is shown to be 325 feet a minute, and 'it was running fast when it struck Mr.

Hanks.' The elevator car·struck deceased while it was descending, and caught his body between the floor of the building and the floor of the car, killing him.

"By the petition appellees claim that appellant desired to operate the elevator while the work of plastering was progressing, and Page, the operator, clothed with authority of appellant to do whatever was necessary in the operation of the elevator car, agreed and promised deceased that while he was performing the work of plastering the elevator shaft warning would be given deceased by Page before starting the elevator car either up or down the shaft, and also to handle the elevator at a slow rate of speed and keep the same under perfect control so as to avoid injury to him while he was engaged in the work of plastering, and that this employee negligently failed to give him this warning and thereby caused his death. The appellant answered by general denial, contributory negligence and assumed risk. It also, by cross-action against John Bardon upon contract to be responsible as an independent contractor for damages for injury incident to his work, sought judgment for like amount awarded against it in favor of appellees. Bardon answered by denial, and specially a want of contractual liability. Judgment was entered in favor of appellees Hanks against appellant, and in favor of Bardon against the cross-action of appellant, in accordance with the verdict of a jury.

"All of the issues of fact were decided by the jury against the contention of appellant, and they are supported by the evidence. We conclude that appellant, through its employee, was guilty of negligence as plead, proximately causing the death of deceased, and that deceased was not guilty of contributory negligence, and that appellees are not precluded from recovery on assumed risk by deceased, and that the amount recovered is sustained by the evidence."

There are a number of interesting questions for review but it will, under our construction of the statute, as applied to the facts, be unnecessary to notice or discuss but one question. That question is, Is a private owner of a building liable for damages, where death ensues, caused by the negligence of its servant, in the operation of a passenger elevator? If not, then under no view that can be taken of the case could a recovery be sustained. A decision of this question involves a construction of article 3017 of our Revised Statutes. That article, so far as it can affect this case, is as follows:

"An action for actual damages on account of injuries causing the death of any person may be brought in the following cases:

"1. Where the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, hirer of any railroad, steamboat, stage coach, or other vehicle for the conveyance of goods or passengers."

So much of the statute as we have quoted above was enacted in this State in 1860 and in the later acts has been brought forward substantially unchanged.

In order to obtain a correct interpretation of this act it may be well to recur to former holdings of this court, as well as to the just and settled rules of construction, which must and should guide us. It was long ago settled in this State that the right to recover, when death

ensued, did not exist, in this character of case, at common law (Hendricks v. Walton, 69 Texas, 192) and that the right to recover in such case is wholly statutory. Nelson v. Galveston, H. & S. A. Ry. Co., 78 Texas, 624; Yoakum v. Selph, 83 Texas, 607. In the case of Galveston, H. & S. A. Ry. Co. v. Le Gierse, 51 Texas, 189, it was said: "The right to such an action in our courts being, then, given by express enactments, parties who seek to avail themselves of their benefits must be governed by their provisions." It has, too, been quite generally held and the rule seems founded in sound legal reason that a statute which confers a right in favor of one person or class of persons and by its terms imposes a liability on another class of persons unknown to and in derogation of the common law should be strictly construed, but this rule does not apply with us in the sense generally used where such rule is invoked in other jurisdictions. Article 2, general provision of our Revised Statutes provides "that the rule of the common law that statutes in derogation thereof shall be strictly construed, shall have no application to the Revised Statutes, but said statutes shall constitute the law of this State respecting the subjects to which they relate, and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice." In such case, however, the right must be found in the statute itself fairly construed. It was, for instance, held that a receiver, as such, operating a railroad under orders of a court was not, prior to the Act of 1892, within the terms of the statute which as the law then stood embraced the "proprietor, owner, charterer or hirer" of such road. In so deciding Chief Justice Stayton used the following language:

"It is the duty of a court to give to language used in a statute the meaning with which it was used by the Legislature, if this can be ascertained; and to do this, if the words used be not such as have a peculiar meaning when applied to a given art or trade with reference to which they are used in the statute, the only safe rule is to apply to them their ordinary meaning, for the Legislature must be presumed to have used them in that sense in which they are ordinarily understood; and if so applying them the legislation in which they are found seems to be harsh or not to embrace and give remedies for acts for which remedies ought to be given, the courts for such reasons are not authorized to place on them a forced construction for the purpose of mitigating a seeming hardship imposed by a statute, or conferring a right which the Legislature has not thought proper to give. It is the duty of a court to administer the law as it is written, and not to make the law; and however harsh a statute may seem to be, or whatever may seem to be its omissions, courts can not on such considerations by construction restrain its operation or make it apply to cases to which it does not apply, without assuming functions that pertain solely to the legislative department of the government.

"It may be difficult to perceive a good reason why an action should not exist for an injury resulting in death caused by the negligence of a receiver or his servants while operating a railway under order of court as for an injury to a passenger not resulting in death, and subject to the same restrictions as to the manner and fund from which a judgment named should be satisfied; but this furnishes no reason why

the right of action should exist in the one case and not in the other, when in the one the right does not exist unless given by statute, while in the other the right of action exists without a statute conferring it." Turner v. Eddy & Cross, Receivers, 83 Texas, 218; see also Dillingham v. Blake, 32 S. W., 77; Yoakum v. Selph, 83 Texas, 608; Texas & P. Ry. Co. v. Collins, 84 Texas, 122; Texas & P. Ry. Co. v. Gay, 86 Texas, 608; Texas & P. Ry. Co. v. Gay, 88 Texas, 113.

Again it has been held that an express company is not within the terms of the statute, though named for some purposes as a common carrier. Lipscomb v. Railway & Express Co., 95 Texas, 5, 55 L. R. A., 869, 93 Am. St., 804. In discussing the paragraph of article 3017, quoted above, Judge Williams, speaking for this court, said: "The express company is not shown to be either one of these. The most that is pleaded and proved is that it had engaged space on cars otherwise wholly controlled by the railroad company, in which goods, in charge of its agents, were transported by the latter company. No sense of any of the words used in this subdivision of the statute would include it. It is true, other provisions of the statute declare express companies to be common carriers, but article 3017 does not create the liability against common carriers eo nomine, but only declares it against the classes named."

In the case of Ott v. Johnson, 101 S. W., 534, it was held that the Revised Statutes, article 3017, providing that an action for injuries causing death, etc., did not apply to tram railroads owned and operated by private individuals on their own premises for private purposes. The same rule was upheld in Halbert v. Texas Tie & Lumber Co., 107 S. W., 592, where it is said: "No right of action is given by the statute against a corporation of the character of appellee for the death of a person caused by the negligence of the agents or employees of the corporation. Rev. Stats., 1879, art. 2899. Under the statute cited, only persons and corporations engaged in the business of a common carrier and the receivers of such corporations are liable for injuries resulting in death which are caused by the negligence of servants or agents. Other character of corporations are only liable for such injuries when they are the result of the negligent act of omission of the corporation, as distinguished from the act or omission of a servant or agent of such corporation. Fleming v. Texas Loan Agency (Texas Civ. App.), 28 S. W., 388; Ott v. Johnson (Texas Civ. App.), 101 S. W., 538."

It is a prime rule of construction that where, in a statute, general words follow a designation of particular subjects or classes of persons the meaning of the general words will be restricted by the particular designation in such statute. This is known as the rule of *ejusdem generis* and is a rule of almost universal application. Among other statements of this doctrine the following from Lewis' Sutherland on Statutory Construction has been approved by the courts of this State:

"When General Words Follow Particular—Doctrine of Ejusdem Generis.—When there are general words following particular and specific words, the former must be confined to things of the same kind. This is known as the rule or doctrine of *ejusdem generis*. Some judicial statements of this doctrine are here given. 'When general words follow an enumeration of particular things, such words must be held

to include only such things or objects as are of the same kind as those specifically enumerated.' 'The rule is, that where words of a particular description in a statute are followed by general words that are not so specific and limited, unless there be a clear manifestation of a contrary purpose, the general words are to be construed as applicable to persons or things or cases of like kind to those designated by the particular words.' 'It is a principle of statutory construction everywhere recognized and acted upon, not only with respect to penal statutes but to those affecting only civil rights and duties, that where words particularly designating specific acts or things are followed by and associated with words of general import, comprehensively designating acts or things, the latter are generally to be regarded as comprehending only matters of the same kind or class as those particularly stated. They are to be deemed to have been used, not in the broad sense which they might bear if standing alone, but as related to the words of more definite and particular meaning with which they are associated.' The general rule is supported by numerous cases." (Lewis' Sutherland on Statutory Construction, section 422.) The same general doctrine, perhaps more particularly applicable to the case in hand, is thus stated in Endlich on Interpretation of Statutes, page 568: "But the general words which follow particular and specific words of the same nature as itself takes its meaning from them, and is presumed to be restricted to the same genus as those words; or, in other words, as comprehending only things of the same kind as those designated by them; unless, of course, there be something to show that a wider sense was included."

The same rule is also thus clearly stated in Cyc., vol. 36, p. 1119: "By the rule of construction known as 'ejusdem generis,' where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The particular words are presumed to describe certain species and the general words to be used for the purpose of including other species of the same genus. The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, they would have made no mention of the particular classes. The words 'other,' or 'any other,' following an enumeration of particular classes are therefore to be read as 'other such like,' and to include only others of like kind or character." Ex parte Muckenfuss, 52 Texas, 467, 107 S. W., 1131. It is a rule often applied that the "meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it," which is but a free translation of the Latin maxim, "noscitur a sociis."

It is urged in behalf of defendants in error that owners of elevators are subject to the same rules and under legal obligation. to exercise the same high degree of care for the safety of persons carried therein as railroads and that they are common carriers. We think they are and should be held liable to a very high degree of care in respect to the safety of persons, who, on their implied invitation, make use of same; but we think it can not be fairly said either generally or as applied to the facts of this case that owners of elevators are to be treated as common carriers. In this case the elevator was in a build-

ing situated on private property belonging to the bank. The evidence is uncontradicted that the bank could exclude any one it chose from use of the elevator and that the president of the bank had, on more than one occasion, done so. We approve the following statement of the law found in Hutchinson on Carriers, third edition, section 100: "Owners and Managers of Passenger Elevators.—The owners and managers of passenger elevators, although spoken of by some courts as common carriers of passengers, can not properly be so classed. The public carrier of passengers, on account of the nature of his employment, is charged in law with certain duties owed to the public among which is that of receiving upon his vehicles all who may offer themselves for transportation, and who stand ready to pay the legal fare and comply with his reasonable rules and regulations. When the nature of the business of operating a passenger elevator is considered, it is clear that the proprietor owes no such duty to the public and is therefore not a carrier of passengers in the full sense of the term as legally understood. Nevertheless, with reference to the safety of their passengers, the law has imposed upon the proprietors of passenger elevators duties precisely similar to those exacted of passenger carriers by railroad. The safety and lives of those who avail themselves of this means of carriage must of necessity be intrusted in a great measure to the care of those who control and operate the cars. The law, therefore, justly holds that while the owners of passenger elevators are not insurers of the safety of their passengers, they are bound to exercise in their behalf the highest degree of skill and foresight, or, as some courts have expressed it, the utmost human care and foresight consistent with the efficient use and operation of the means of conveyance employed. And this measure of care applies as well to the selection of competent operators as to the operation of the machinery and cars."

But as we have seen (Lipscomb v. Railway & Express Co., 95 Texas, 5, 55 L. R. A., 869, 93 Am. St., 804), the mere fact that a corporation may be declared to be a common carrier does not create a liability in the character of case before us, but such liability is declared only against the class of persons named in the statute. We think, bearing in mind the rules above noted and having in view the objects and purposes of the law, that liability is to be adjudged as if the statute in question, in respect to the general words, read as follows: "Or other *like* vehicles for the conveyance of goods and passengers." This statute was enacted in 1860. It may well be doubted whether there was at that time a passenger elevator in Texas. When the article in question was amended in 1892, it was in the respects applying to this case, permitted to remain unchanged. It was meant, we think, to apply to agencies and carriers transporting passengers and freight from some point of origin to some more or less distant point of destination. This is of necessity implied in every act of carriage of freight or passengers by either railroad, steamboat or stage coach. If the nature of things, their engagements and works of transportation never contemplated a mere journey from one story of a building to another and to us it seems clear that when the Legislature used the term "other vehicle" it meant a vehicle performing, substantially at least, the same office and serving the same necessities. If these conclusions are sound, then the

judgment on the law, under the facts, can not be met by the fact of the care imposed on owners and managers of elevators or the necessity for the protection of passengers therein.   To these considerations the answer is that elevators are not included in the language of the statute which gives the cause of action.   The appeal would doubtless have great weight with the Legislature.   We must stop where the law stops. It follows since the facts of liability are not a matter of dispute, that the judgments of the District Court and of the Court of Civil Appeals should be, as they are hereby, reversed and judgment is here rendered for the bank, that it go hence without day and recover all its costs in this behalf expended.

*Reversed and rendered.*