

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

October 29, 1953

Hon. Robert S. Calvert                 Opinion No. S-109
Comptroller of Public Accounts
Austin, Texas                          Re: Issuance of salary warrants
                                       from specified appropriation
                                       items of the Insurance Com-
                                       mission, Liquor Control
Dear Mr. Calvert:                      Board and Governor's Office.

        Your letter quotes five appropriation items in the cur-
rent general appropriations act, none of which contains the words
"salary" or "wage." Your question is whether you may issue war-
rants in payment of payroll requests drawn against the appropria-
tions in question in view of the general rider appearing as Section
5f of Article VI, Chapter 81, Acts of the 53rd Legislature. That
rider is as follows:

        "f. None of the funds appropriated in this Act
    for travel expenses or general operating expenses,
    for equipment, for maintenance and miscellaneous,
    or for contingent expenses, or for any other purpose,
    may be used for paying any salaries and wages unless
    the language of such appropriation items explicitly au-
    thorizes such use. The provisions of this paragraph
    shall not apply to appropriations made for agencies of
    higher education.

        "In those instances where the language of such
    appropriation items does explicitly authorize the use
    of funds for paying salaries and wages, such employees
    shall not be paid a larger amount than that provided in
    the regular appropriated salary items for similar posi-
    tions in such agency of the State. In the event there are
    no similar positions within such agency, then such em-
    ployees shall not be paid a larger amount than that pro-
    vided for similar work or positions elsewhere in the
    State Government. In the event common laborers, skilled
    laborers, and mechanics cannot be obtained at the salary
    rates indicated in this paragraph, then the head of such
    agency of the State may pay for temporary employment
    only at rates not exceeding the prevailing wage scale
    paid in the locality where the temporary service is to
    be rendered." (Emphasis added throughout this opinion.)

You state in your letter that "Except for the rider quoted above, this department construes the claims for salary legal."

The solution to your question, and to similar questions which will undoubtedly arise later on, is dependent on a proper interpretation of the phrase "or for any other purpose" as the same appears in the first sentence. If that phrase is given a literal interpretation, independent of other terms associated with it in Section 5f, then the restrictions of Section 5f are applicable to all funds appropriated by Chapter 81 because each and every fund appropriated therein is for one or more purposes and would be comprehended by the general words "or for any other purpose." In that event, no salary warrants could be drawn except against those appropriations which "explicitly authorize the use of funds for paying salaries and wages."

But we have concluded that no such literal and independent interpretation was intended by the Legislature. Instead, we think that the general words "or for any other purpose" were intended by the Legislature to include and refer only to funds appropriated for any other purpose similar to the purposes theretofore specified. Stated another way, it is our opinion that the words "or for any other purpose" were intended by the Legislature to refer to any other funds of the same general kind or class as those for "travel expenses," "general operating expenses," "equipment," "maintenance and miscellaneous" and "contingent expense."

Such an interpretation finds sanction in the rule of construction called ejusdem generis which holds that where general words follow a designation of particular subjects or things, the general words will be construed to refer to subjects or things of like kind or class as those specified unless a contrary purpose is manifest. This rule has been frequently applied by Texas courts in construing statutes. Farmers' & Mechanics' Nat. Bank v. Hanks, 104 Tex. 320, 137 S.W. 1120 (1911); Fowler v. Hults, 138 Tex. 636, 161 S.W.2d 478 (1942); Stanford v. Butler, 142 Tex. 692, 181 S.W.2d 269 (1944).

In the leading case of Farmers' & Mechanics' Nat. Bank v. Hanks, supra, the Court held that a passenger elevator was not included within a statutory provision governing operators of "any railroad, steamboat, stagecoach, or other vehicle for the conveyance of goods or passengers." Part of the Court's reasoning is shown by the following paragraph of its opinion:

"The same rule is also thus clearly stated in 36 Cyc. p. 1119: 'By the rule of construction known as "ejusdem generis," where general words follow the

enumeration of particular classes of persons or things,
the general words will be construed as applicable only
to persons or things of the same general nature or class
as those enumerated. The particular words are presum-
ed to describe certain species and the general words to
be used for the purpose of including other species of the
same genus. The rule is based on the obvious reason
that, if the Legislature had intended the general words
to be used in their unrestricted sense, they would have
made no mention of the particular classes. The words
'other,' or 'any other,' following an enumeration of par-
ticular classes, are therefore to be read as 'other such
like,' and to include only others of like kind or charac-
ter.' Ex parte Muckenfuss, 52 Tex. Cr. R. 467, 107 S.
W. 1131. It is a rule often applied that the 'meaning of
a doubtful word may be ascertained by reference to the
meaning of words associated with it,' which is but a free
translation of the Latin maximum, 'Noscitur a sociis.' "
(137 S.W. at 1124).

A thorough study of the current general appropriation
act and especially the rider contained in Article VI, Section 5f mani-
fests to us no legislative intent that in all instances money should be
spent for salaries and wages only when explicit authority to do so is
granted. The current act, like its many predecessors, contains nu-
merous appropriating items in the form of "lump sum" provisions
to finance programs or projects requiring labor, material and other
diverse types of expenditures from the single appropriated item. In
many such instances a literal and independent interpretation of "for
any other purpose" so as to prohibit payment of salaries and wages
would substantially if not completely frustrate the particular legis-
lative purpose involved.

Moreover, the language of Section 5f, taken as a whole,
supports our conclusion that the words 'or for any other purpose'
were not intended to refer to all kinds and classes of appropriation
items contained in the act. You will recall that during the preceding
three bienniums a rider corresponding to the present Section 5f pro-
vided:

"Contingent Expenses. None of the funds herein-
above appropriated for 'contingent expenses' or 'main-
tenance and miscellaneous' shall be used for the payment
of any salaries unless specifically authorized to be paid
in the itemization under the contingent maintenance and
miscellaneous items hereinabove set out and designated

therein as 'salaries,' 'extra help,' or 'seasonal labor.' "[1]

It is apparent by comparison that the 53rd Legislature in enacting Section 5f not only added the concluding phrase "or for any other purpose" but also added to the original list several specified types of expense other than "for maintenance and miscellaneous" and "for contingent expenses." In the second sentence of Section 5f, the Legislature exempted appropriations made for agencies of higher education from the general prohibition, and in the first and third sentences made reference to "such appropriation items."

The exemption for agencies of higher education doubtless was included as a precautionary measure. In practically all cases, the form followed in Article V specifically included funds for salaries and wages in an item designated "General Operating Expenses" -- one of the general class of items listed in Section 5f. The Section 5f exemption was apparently thought necessary to remove all conceivable doubt or conflict. The point of present interest is that the provision as to agencies of higher education was obviously included because of possible questions relating to General Operating Expenses, a type or class of item listed in Section 5f, not because of appropriations to higher educational agencies for "any other" purposes.

But of more significance to us is the use of the reference "such appropriation items" in the first and third sentences. If the Legislature had intended Section 5f limitations to apply to appropriations for all purposes it was entirely inconsistent to so use the word "such." On the other hand, if (as we believe) the Legislature intended Section 5f limitations to apply to a limited class or limited variety of appropriation items, then the reference "such appropriation items" is entirely proper and meaningful.

Having so concluded as to the intent and meaning of Section 5f, the problem remaining is one of classification. Each item must be analyzed separately. As to each we must decide: Is the item "of the same general nature or class" or of like kind or character as, or is it for any purpose similar to, those specified in Section 5f? If so, Section 5f applies. If not, that Section requires no explicit authorization for use of that fund for paying salaries and wages.

The first item mentioned in your letter is the one following Item No. 18 of appropriations to the Life Insurance Division, Board of Insurance Commissioners, as follows:

---

[1] Acts 52nd Leg., 1951, Ch. 499, Art. III, Sec. 2(16)f, p. 1439; Acts 51st Leg., R.S. 1949, Ch. 615, Sec. 2(15)f, p. 1349; Acts 50th Leg., 1947, Ch. 400, Sec. 2(14)f, p. 938.

"From current revenues and any balances on hand at the beginning of each fiscal year in the Burial Association Rate Fund (No. 180), there is hereby appropriated for supplemental expenses of the Burial Rate Board Section 3714" (Acts 53rd Leg., 1953, Ch. 81, Art. III, p. 228).

This appropriation for "supplemental expenses" would at first blush appear to be of like kind to "other operating expenses," "general operating expenses," "maintenance and miscellaneous" and "contingent expenses." But, after considering the independent duties and responsibilities imposed on the Burial Association Rate Board by the general law (See Articles 14.47 and 14.48 of the Insurance Code), and after learning that the only other appropriation to the Board covers Board member's per diem only, we have concluded that this "supplementary expense" item is quite unlike the above. In fact it constitutes the only fund out of which this Board may finance its special activities of gathering and disseminating data, statistics and information and of promulgating and amending rate schedules. On the other hand, appropriations for "travel expense," "other operating expenses," "general operating expenses," "maintenance and miscellaneous," "equipment" and "contingent expenses," as such terms are ordinarily used, never constitute the entire fund from which a distinct and independent state function or program is financed. Consequently, we hold that this "supplementary expense" item was not intended to be included within the class of items to which Section 5f applies.

The second item mentioned in your letter is Item No. 49 to the Liquor Control Board which is as follows:

"From current revenues and any balances on hand at the beginning of each fiscal year in the Liquor Board Confiscation Fund there is hereby appropriated for expenses as stipulated in Art. 666-30(b), known as the Liquor Control Act, estimated to be --- 28,000 28,000" (Acts 53rd Leg., 1953, Ch. 81, Art. III, p. 248).

Under the terms of the statute referred to this fund may be expended for a wide variety of purposes if deemed necessary by the Board in administering and enforcing the provisions of the Texas Liquor Control Act. In our opinion the wide variety of enforcement purposes which may be selected by the Board as authorized uses for this appropriation distinguishes it from the classes of items listed in Section 5f, even though some of these (e.g. "contingent expenses") to a lesser extent authorize a discretionary selection of ultimate use. For this reason we hold that Item No. 49 was not intended to be included within the class of items to which Section 5f applies.

428

The third, fourth and fifth items mentioned by you are Item Nos. 24, 25 and 26 to the Governor's Office which are as follows:

"Defense of Texas' Tidelands:

"To be expended by the Governor for presenting facts and arguments before committees of Congress in support of continued State ownership of submerged lands, and for cooperation between the States in the defense of State's rights, there is appropriated for the biennium beginning September 1, 1953 the sum of 50,000"

"Southern Regional Education Compact:

"For participation by this State in the educational program under the Southern Regional Education Compact administered by the Board of Control for Southern Regional Education, and for out-of-State scholarship aid under that program, there is appropriated the sum of . . . 120,000  120,000"

"Interstate Oil Compact Commission:

"For the payment of Texas' share of expenses for the maintenance and operation of the Interstate Oil Compact Commission, and of expenses of the Governor's Office related to the program of that Commission, there is appropriated out of the Oil and Gas Enforcement Fund (No. 79) for each of the fiscal years of the biennium beginning Sept. 1, 1953 the sum of 50,000 50,000"
(Acts 53rd Leg., 1953, Ch. 81, Art. III, pp. 210-211).

We have concluded that each of these three items constitutes the entire fund from which a distinct and independent state function or program is financed. Therefore, we hold that none of them was intended to be included within the class of items to which Section 5f applies.

SUMMARY

Restrictions in Section 5f of Article VI, Chapter 81, Acts of the 53rd Legislature (the current

general appropriation act) on the use of non-explicit appropriation items for paying salaries and wages are applicable to appropriation items of the types listed and to items "of the same general nature or class." Farmers' & Merchants' Nat. Bank v. Hanks, 104 Tex. 320, 137 S.W. 1120 (1911). Section 5f does not apply to all items contained in the act. Whether a given item is "of the same general nature or class" must be determined from the circumstances of each case.

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By Phillip Robinson
Phillip Robinson
Assistant

APPROVED:

Willis E. Gresham
Public Affairs Division

Burnell Waldrep
Reviewer

W. V. Geppert
Reviewer

Robert S. Trotti
First Assistant

PR:mg