

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

February 10, 1971

Honorable Bruce Gibson
Commissioner
Credit Union Department
900 Congress Avenue, Suite D
Austin, Texas    78701

Opinion No. M-791

Re:   May a credit union
created under Article
2461-1, et seq., V.C.S.,
own a subsidiary cor-
poration whose business
purposes are unrelated
to those of credit
unions?

Dear Mr. Gibson:

        In your letter asking this office for an opinion, you
ask two questions:

> "1.   Under the provisions of Article 2461,
>        V.C.S. may a credit union own a sub-
>        sidiary corporation under its corporate
>        powers as set out under Section 5, or
>        through its investment powers as set
>        out under Section 24?
>
> "2.   If the answer to the above is in the
>        affirmative, may a wholly-owned sub-
>        sidiary corporation distribute its
>        profits annually to members of the
>        credit union."

        It is our opinion that your first question must be
answered in the negative, and that therefore your question 2
needs no answer.

        Credit unions must be organized under the provisions of
the 1969 Statute codified as Article 2461-1 through Article 2461-
49, Vernon's Civil Statutes of Texas, (Acts of the 61st Legisla-
ture, 1969, chapter 186, page 540).  Article 2461-1, supra,
defines the purposes of a credit union as:   (a)   for the purpose
of encouraging thrift among its members;   (b)   creating a source
of credit at fair and reasonable rates of interest;  (c)   to pro-
an opportunity for its members to use and control their own
money; and (d)  to provide equal opportunities for the members
to improve their economic and social condition.

-3845-

By the provisions of the law, loans can be made only to "members" and the Board of Directors must "... invest funds as provided in this Act; ..."  Art. 2461-5(10).  We find no mention in any of these statutes of investments unrelated to the business of lending money or any powers given which are unrelated to the primary purpose of providing credit in the form of loans to its members at fair and reasonable interest rates. While the statutes provides a comprehensive plan for creating and operating credit unions, and while they touch on such things as membership and expulsion of members, this law is primarily concerned with monetary matters connected with the business of lending and borrowing money.  In Article 2461-15(d), for example, we find that any loan security in the form of real estate liens cannot be "residential" real estate, nor can a loan exceed 60% of the appraised value of the land.

Article 2461-24, allowing investment of credit union funds, reads as follows:

"Funds not used in loans to members may be invested:

(1)  in capital shares, obligations, or preferred stock issues of any agency or association organized either as a stock company, mutual association or membership corporation, provided the membership or stockholdings, as the case may be, of such agency or association are confined or restricted to credit unions, or organizations of credit unions, and provided the purposes for which such agency or association is organized are designed to service or otherwise assist credit union operations;

(2)  in obligations of the State of Texas or any subdivision thereof;

(3)  in securities, obligations, participations, or other instruments of or issued by, or fully guaranteed as to principal and interest by, the United States government or any agency thereof; or any trust or trusts established for investing directly or collectively in the same;

(4)   in loans to other credit unions in an amount not to exceed 25% of the shares, deposits, and surplus of the lending credit union, or any trust or trust established for lending directly or collectively to credit unions;

(5)   in purchases from any liquidating credit union in accordance with rules and regulations prescribed by the Credit Union Commissioner, notes made by individual members of the liquidating credit union at such prices as may be agreed upon by the board of directors of the liquidating credit union and the board of directors of the purchasing credit union, but no purchase may be made under authority of this paragraph if, upon the making of that purchase, the aggregate of the unpaid balances of notes purchased under authority of this paragraph would exceed five percent of the shares, deposits, and surplus of the credit union;

(6)   in an aggregate amount not exceeding two and one-half percent of the credit union's total assets or the amount of its reserve fund, whichever is lesser, in any agency or association of the type described in Subdivision (1) hereof, provided the purposes of any such agency or association are designed to assist in establishing and maintaining liquidity, solvency, and security in credit union operations; and

(7)   in certificates or passbook-type accounts, insured by the Federal Savings and Loan Insurance Corporation, which are issued by a building and loan association or a savings and loan association domiciled in the United States of America;

(8)  <u>in certificates of deposit issued by
     a state or national bank domiciled in
     the State of Texas</u>, provided, however,
     no credit union may purchase, or own
     at any one time, certificates of de-
     posit totaling in excess of ten (10)
     percent of the paid-in capital and
     surplus of such issuing bank." (Em-
     phasis added)

If there is any basis in the credit union statutes for
allowing a credit union to engage in unrelated businesses or
activities, or to invest in them, the authority would have to
be drawn from Subsection (1) of Article 2461-24. Subsections
(2) through (8), inclusive, of this Article only allow invest-
ments in secured obligations, much in the fashion of other
closely regulated statutory investments allowed by law as to any
fiduciary of trustee. These are listed as obligations of the
State of Texas, obligations of the United States government,
loans to other credit unions, liquidation of other credit unions,
Federally insured passbook-type accounts, and certificates of
deposit issued by a state or national bank. Investment in such
secured ventures are considered by the Legislature as safe and
not speculative investments where the loss could impair the
stability of the credit union. It is apparent that the statutes
as to credit unions, when considered as a whole, provide only
for secured investment transactions, and that speculative invest-
ments are not authorized by law; the statutes as a whole are
looked to for the legislative intent. <u>Popham v. Patterson</u>, 121
Tex. 615, 51 S.W.2d 680 (1932). The rule of <u>ejusdem generis</u>
applies to a construction of Article 2461-24 and therefore sub-
section (1) of this Article could only authorize investment of
a credit union's funds in sustaining and bolstering other credit
unions so as to provide reasonable loans to its members. Sub-
section (6) of this Article 2461-24 makes this clear by declaring
that the subsection (1) description relates to those which are
designed ". . . to assist in establishing and maintaining liquidity,
solvency, and security in credit union operations; . . ." <u>Farm-
ers' and Mechanics' National Bank v. Hanks</u>, 104 Tex. 320, 137
S.W. 1120, 1123-1124 (1911); <u>Calvert v. Capital Southwest Corpora-
tion</u>, 441 S.W.2d 247, (Tex. Civ. App. 1969, error ref. n.r.e.,
app. dism. - U.S. - 90 S. Ct. 1120).

S U M M A R Y

A credit union organized under the provisions of Acts of the 61st Legislature, 1969, chapter 186, page 540, (Articles 2461-1 through 2461-49, V.C.S.) may not invest in or own a subsidiary corporation which is unrelated to the purposes of a credit union as described in the organic statutes relating thereto.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John H. Banks
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Jim Swearingen
Roger Tyler
Houghton Brownlee
Ivan Williams

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant