OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

March 8, 1999

The Honorable Janelle M. Haverkamp
District Attorney, 235th Judicial District
Cooke County Courthouse
Gainesville, Texas 76240

Opinion No. JC-0014

Re: Whether clip-on microphones for county deputy sheriffs' portable radios are "security hardware" that may be purchased with monies from the courthouse-security fund under article 102.017(d)(9) of the Code of Criminal Procedure (RQ-1101)

Dear Ms. Haverkamp:

Under Code of Criminal Procedure article 102.017(d)(9), a county commissioners court may use monies from the courthouse-security fund "only to finance . . . security hardware." You ask whether article 102.017(d)(9) allows the Cooke County Commissioners Court to use monies from the courthouse-security fund to purchase, as security hardware, clip-on microphones for deputy sheriffs' portable radios. We conclude that the clip-on microphones are not security hardware for purposes of Code of Criminal Procedure article 102.017(d)(9). Consequently, subarticle (d)(9) does not permit the commissioners court to expend monies from the courthouse-security fund to purchase the clip-on microphones.

You describe the equipment and the perceived need for the equipment Cooke County desires to purchase. The county wishes to buy enough clip-on microphones for either each deputy sheriff or each deputy sheriff who escorts a prisoner to and from court proceedings while the deputy is in the courthouse. We understand from your letter that the equipment will enable the deputies to be alerted to an emergency in the courthouse that requires increased security and that the deputies will then quickly respond to the situation:

> Several "panic buttons" are distributed throughout the courthouse to aid the Sheriff in maintaining its security. Should courthouse personnel become aware of a volatile or dangerous situation, they can push one of the "panic buttons." A computer reads the location of the triggered "panic button" and sends a radio signal over a channel monitored by county law enforcement agencies to notify them of the situation. Any Deputy Sheriffs in the vicinity, including those assigned to transport prisoners, will respond to the radio

signal which directs them to the specific office in the courthouse where help
is needed.

Letter from The Honorable Janelle M. Haverkamp, District Attorney, 235th Judicial District, to Opinion Committee Chairperson, Office of the Attorney General (Feb. 25, 1998) (on file with Opinion Committee).

You ask two questions. First, you ask whether article 102.017(d)(9) authorizes the county commissioners court to expend monies from the courthouse-security fund to purchase clip-on microphones for the portable radios of those deputy sheriffs who regularly transport prisoners between the county jail and the courthouse. Second, you ask whether article 102.017(d)(9) allows the commissioners court to expend monies from the courthouse-security fund to purchase clip-on microphones for the portable radios of all deputy sheriffs, who theoretically may be called upon to respond to a panic-button signal from the courthouse. With respect to both questions, you appear to be asking only about the purchase of clip-on microphones, not about the portable radios or any other component of the panic-button system you describe.

Code of Criminal Procedure article 102.017(d) specifically and narrowly enumerates items for which monies from the courthouse-security fund may be expended:

A [courthouse security] fund . . . may be used *only* to finance *the following items* when used for the purpose of providing security services for buildings housing a district, county, justice, or municipal court, as appropriate:

(1) the purchase or repair of X-ray machines and conveying systems;

(2) handheld metal detectors;

(3) walkthrough metal detectors;

(4) identification cards and systems;

(5) electronic locking and surveillance equipment;

(6) bailiffs, deputy sheriffs, deputy constables, or contract security personnel during times when they are providing appropriate security services;

(7) signage;

(8) confiscated weapon inventory and tracking systems;

(9) locks, chains, or other security hardware; or

> (10)  continuing education on security issues for court personnel and
> security personnel. [Emphasis added.]

This list expressly purports to be exclusive: a county may use monies from the courthouse security fund only to finance an item listed, and only if the item will be used to provide courthouse security. Indeed, this office previously has stated that monies in the courthouse-security fund "are earmarked for very specific expenses." Tex. Att'y Gen. Op. No. DM-283 (1994) at 10.

Because clip-on microphones such as you describe are not explicitly listed in article 102.017(d), a county commissioners court may not use monies from the courthouse-security fund to purchase them unless clip-on microphones are implicitly encompassed within one of the security items expressly listed in the article. You suggest only subarticle (d)(9), and we therefore do not consider whether subarticles (d)(1) through (8) or subarticle (d)(10) may include the clip-on microphones.

We conclude that Code of Criminal Procedure article 102.017(d)(9) does not implicitly permit a county to expend monies from the courthouse-security fund to purchase clip-on microphones for its deputy sheriffs in either circumstance you describe, even though the clip-on microphones may be security-related. Clip-on microphones are not "locks" or "chains" for purposes of subarticle (d)(9). Moreover, clip-on microphones are not security hardware for purposes of subarticle (d)(9). The phrase "other security hardware" is limited by the types of listed items that precede it: locks and chains. "It is a prime rule of construction that where in a statute general words follow a designation of particular subjects or classes of persons the meaning of the general words will be restricted by the particular designation in such statute. This is known as the rule of ejusdem generis, and is a rule of almost universal application." *Farmers' & Mechanics' Nat'l Bank v. Hanks*, 137 S.W. 1120, 1123-24 (Tex. 1911); *accord Stanford v. Butler*, 181 S.W.2d 269, 272 (Tex. 1944). The clip-on microphones you describe are not of the same class of items as locks and chains. Locks and chains are low-technology equipment attached to fences, doors, and windows, and they are used to restrict access to a place; clip-on microphones, by contrast, constitute a high-technology component of an electronic communications system that is not restricted to monitoring the use of fences, doors, or windows.

Our reading of article 102.017(d) and, in particular, the phrase "other security hardware" in subarticle (d)(9), comports with legislative intent. Code of Criminal Procedure article 102.017 was adopted in 1993 as part of Senate Bill 243, but it was not in the bill as it was introduced. As introduced by Senator Leedom, Senate Bill 243 proposed to adopt only what is now Local Government Code section 291.008, which section generally authorizes a county commissioners court to collect a security fee upon the filing of any document and to deposit the security fees in the courthouse security fund. *See* Act of May 22, 1993, 73d Leg., R.S., ch. 818, § 2, 1993 Tex. Gen. Laws 3258, 3258-59. In its introduced form, the bill provided a county commissioners court with great flexibility in deciding how to use monies from the courthouse security fund: "The fund may be used only for the purpose of providing security services for buildings housing a district or county court." With this broad grant of discretion, the bill returned to the floor of the Senate for its second

reading. There, Senators Henderson and Sibley asserted that the bill would give county commissioners courts virtually unlimited discretion to pay any costs that could nominally be designated security:

> Senator Henderson: My understanding is, is all this [bill as proposed] would really result in is a very large windfall to the commissioners court to spend as they . . . see fit, hiring bailiffs or whatever . . . .
>
> Senator Sibley: Are there any kind of guards [in this bill], or prohibitions against [the money] being spent on any other . . . county expenses?
>
> Senator Henderson: Senator Leedom will have to answer that, I don't know, but I know that . . . if you give [county commissioners courts] eight hundred thousand dollars, they're going to figure out a way to spend it.
>
> Senator Sibley: On security, I'm sure.

*See* Debate on Tex. S.B. 243 on the Floor of the Senate, 73d Leg., R.S. (Mar. 17, 1993) (testimony of Senators Henderson and Sibley) (transcript available from Senate Staff Services Office). Even Senator Leedom admitted, later in the same debate, that the bill as introduced was "permissive":

> Senator Sibley: Those security services could be anything, couldn't they? They could be salaries of bailiffs that have historically been paid through other funds? They could be for metal detectors, they could be for private security, they could be for night time security. What, what could this not apply to as far as security around the courthouse?
>
> Senator Leedom: Well, what it's giving is . . . a very permissive relationship for the county commissioners to decide that they want to put . . . in the security post and maintain them. Now you—
>
> Senator Sibley: But it doesn't say that. This could be to repair the front door of the courthouse.
>
> Senator Leedom: If, if it's going to provide security for you and I when we go in that courthouse or anybody else, you're right, that's up to the discretion of the commissioners.

*Id.*

Responding to Senators Henderson and Sibley, Senator Leedom proposed amending the bill to add the text of what is now Code of Criminal Procedure article 102.017(d). *See id.* As Senator Leedom, the bill's author, explained, the amendment to the bill ensures that monies in the courthouse-security fund may be used "only . . . for . . . that equipment and services that provide the security." *See* Debate on Tex. S.B. 243 on the Floor of the Senate, 73d Leg., R.S. (Apr. 15, 1993) (testimony of Senator Leedom, author of bill) (transcript available from Senate Staff Services Office). Senator Leedom's proposed amendment passed. In the House, the proposed article 102.017(d) was summarized as permitting a county commissioners court to finance with monies from the courthouse security fund "[o]nly" the items listed in that subarticle. *See* HOUSE RES. ORG., BILL ANALYSIS, Tex. S.B. 243, 73d Leg., R.S. (1993).

Given this legislative history and the express terms of article 102.017(d) limiting the security items that may be purchased with courthouse-security funds, it is our opinion that article 102.017(d)(9) does not authorize a commissioners court to purchase clip-on microphones for its deputy sheriffs.

## S U M M A R Y

Article 102.017(d)(9) of the Code of Criminal Procedure does not authorize a commissioners court to expend monies from the courthouse-security fund to purchase clip-on microphones for deputy sheriffs' portable radios.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General