## Western U. T. Co. v. The State of Texas.

### (Case No. 1619.)

1. Construction of statutes — Constitutional law. — If part of a statute be violative of the state or the United States constitution, and another part thereof, which is constitutional, be separate and distinct from the part which is void, the latter will be operative and in force.
2. Same. — When the several parts of the statute are so blended and dependent, one upon the other, that it cannot be presumed the state would have passed any portion thereof without intending that all should be enforced, and a part is unconstitutional, then the entire statute will be disregarded.
3. Assessment of taxes. — An assessment of taxes may be properly made on a company under the sworn statement of its chief manager, when so required to be made by statute.
4. Statute construed — Taxes — Constitutional law. — Where the statute required a statement to be made by the chief manager of a telegraph company of the entire number of the full-rate and half-rate messages of the company, and that thus the amount of taxes due should be ascertained, and a tax upon certain of the messages was held unconstitutional, but the law contained no direction requiring a discrimination in the report between the messages that could be legally taxed and those that could not, the entire law was inoperative and void.

Appeal from Travis. Tried below before the Hon. A. S. Walker.

*Walton & Hill*, for appellant, cited: 105 U. S., 460; *Ex parte* Towles, 48 Tex., 413, 442; Cooley on Const. Lim., p. 214, (*177); Clegg v. State, 42 Tex., 605, 611; Lockhart v. City of Houston, 45 Tex., 317, 324; Cooley on Tax., pp. 200–202, and notes, 208, 250, 260, 295, 541; Texas Bank. and Ins. Co. v. State, 42 Tex., 636, 637; Webber v. Reinhard, 73 Pa. St., 370; State v. Hodges, 14 Rich. (S. C.), 256.

That the tax was uncertain and could not be enforced, they cited: Lockhart v. City of Houston, 45 Tex., 324; Webber v. Reinhard, 73 Pa. St., 375.

*J. D. Templeton*, Attorney-General, and *E. T. Moore* and *D. W. Doom*, for the state, cited: Whart. on Ev., secs. 440, 446, 508, 512, 1290; Hardy v. Merrill, 56 N. H., 241.

Stayton, Associate Justice. — The nature of this action and the several steps taken therein are thus correctly stated in brief for appellant:

"This suit was begun August 28, 1880, in the district court of Travis county, by the state of Texas, for the purpose of recovering from the Western Union Telegraph Company the taxes (one cent

for each full-rate, and one-half cent for each less than full-rate message sent over appellant's lines in Texas) fixed by article 4665 of the Revised Statutes of Texas, for the quarters beginning October 1, 1879, and ending June 30, 1880.

" The company defended on the ground that some of the messages so sent and sought to be taxed were messages from points in Texas to points in the United States and territories of the United States outside of Texas, and relating to commerce between the states; and others were messages from and to the different department agencies and offices of the United States, and concerned the business and governmental affairs of the United States, and that the law creating said tax was void under the constitution and laws of the United States and the constitution of Texas.

" The court held the tax valid, and rendered judgment against the company March 10, 1881, for the tax on the entire number of messages sent, and for the interest from January 1, after the dates at which the taxes should, by the statute, have been paid. The company appealed from that judgment to this court, where, at the Austin term, 1881 (W. U. Tel. Co. v. State, 55 Tex., 314), the judgment of the district court of Travis county was affirmed as to the validity of the tax, but reversed as to the interest allowed. The company then took the case, by writ of error, to the supreme court of the United States, where (W. U. Tel. Co. v. State of Texas, 105 U. S., 460) the judgment of the supreme court of Texas was reversed and the cause remanded, the statute of Texas (R. S., art. 4665) under which the tax was sought to be recovered being held void in so far as the same applied to or was sought to be enforced against interstate and governmental messages; the question as to whether the statute remained enforceable as against other messages being relegated to the courts of Texas. The case having been in turn remanded to the district court of Travis county, the state, by supplemental petition, set up that not more than a stated per cent. of the whole number of messages sent during said quarters were governmental messages, and that of the remainder about a stated per cent. were sent from points to points wholly in Texas, and asked judgment for the tax on the messages other than government messages sent from point to point in Texas.

" The defendant filed demurrers and general denial. The case was tried before the court without a jury, 1883, and judgment rendered for the tax according to the Revised Statutes, art. 4665, on the number of messages estimated by the court from the evidence — to have been sent during the time sued for — wholly within Texas, and

not governmental messages. Amount of tax adjudged, $1,196.82. The defendant again appealed, and brings the case up for revision.

"The court below filed findings of fact and conclusions of law. The record also contained a statement of facts."

### FINDINGS OF FACT.

1. "The defendant was an incorporated and chartered telegraph company, doing business in the state of Texas from the 1st day of October, 1879, continuously, to the 1st day of July, 1880, during said term sending and receiving telegraphic dispatches as a business. Its lines extended along the railroads of Texas and into and through nearly all the states of the Union, and to Washington City, D. C.

2. "That during the months of October, November and December, 1879, said company sent sixty-nine thousand five hundred and ninety-three full-rate messages, and forty-five thousand six hundred and forty-six half-rate messages in the state, and that during the months of January, February, March, April, May and June, 1880, it sent ninety-nine thousand four hundred and eighty-three full-rate and fifty-three thousand seven hundred and sixty-two half-rate messages.

3. "That said company has an officer and resident agent or employee, residing and on duty in his employ, for defendant, in Travis county, Texas.

4. "That the defendant is chargeable for $2,197.80 taxes under art. 4665, Revised Statutes, as occupation taxes, for and during the said time from October 1, 1879, to July 1, 1880.   .   .   .

5. "It also appeared from the testimony that the number of messages above stated included all messages sent from Western Union Telegraph offices within Texas, to all other points in the United States, both within and out of the state of Texas; also messages sent from the government officers, agents of the United States in Texas, to other officers, agents or departments of the said United States government; also all messages sent over Western Union line from points in Texas relative to commerce between Texas and other states of the Union during the time stated. A large proportion of the messages sent belong to the classes here enumerated.

6. "The defendant company has about one hundred and twenty-five offices in Texas. The number of messages sent without the state was not shown, nor the amount sent by the United States government, its agents or employees, nor those relating to commerce during the time.

7. "The court also certified the following additional facts to those found on former trial:

(1) "That ninety-nine thousand seven hundred and fifty-four full-rate and forty-two thousand five hundred and ninety-one half-rate messages were sent (to points within the state of Texas) by defendant from October 1, 1879, to July 1, 1880, and that during said time one thousand six hundred and seven United States government messages were sent. These last estimated as proportionally divided between the whole and half-rate messages.

(2) "Estimating the tax upon this basis at the rate fixed by the statute, there is found due as follows:

| | |
|---|---:|
| On full-rate messages........................................................ | $997 54 |
| On half-rate messages ...................................................... | 212 95 |
| | $1,210 49 |
| Deduct on United States government work.............................. | 13 67 |
| | $1,196 82" |

On this finding of facts the court below entered judgment in favor of the state for $1,196.80.

The act under which the tax is claimed in this case is as follows: "From every chartered telegraph company doing business within this state, there shall be collected one cent for every full-rate message, and one-half that for every message less than a full-rate message sent, this tax to be paid quarterly to the comptroller on the sworn statement of the chief manager of said company or companies, who shall keep a record of such messages, and the receipt of the comptroller under seal shall be issued to said company or companies, certified copies of which shall be evidence of the payment of the state tax; *provided*, railroad messages for running their trains and for company use shall not be taxed; *provided further*, that nothing herein contained shall authorize the levy or collection of any county or municipal tax upon any such chartered company for messages sent."

It is urged that as this law has been held unconstitutional in so far as it applies to messages sent beyond the state, and as to messages sent in the transaction of the business of the general government, it ceases to be operative as a tax law for any purpose; for the reason that, as it now stands, it does not provide a mode for the assessment or ascertainment of the amount of tax which may legally be subject to its provisions.

It does not necessarily follow, because a statute is void in part that it is void *in toto;* for some of its provisions, not liable to any

constitutional objection, may be separate and distinct from the parts which are void, and so complete within themselves, and so clearly evidencing the legislative intention in reference to the subjects to which they relate that they may stand without reference to the parts which are void.

The rule is thus well stated : "When, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, dependent on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must stand." Cooley's Con. Lim., 215.

Tested by this rule, how does the statute in question stand, shorn of application to *all* classes of messages which may be sent by telegraph companies?

The purpose of the act was to impose a tax upon telegraph companies in amount to be determined by the entire number of messages which the particular company, sought in the given case to be charged, had transmitted; and to make the accomplishment of this purpose practicable, to provide a means by which the entire amount of taxable business done might be ascertained. In other words, to impose the tax, and at the same time provide the manner in which its amount, in a given case, could be ascertained; and it cannot be presumed that the legislature would have imposed the tax, it not being a specific tax on the occupation, without having at the same time provided a means for ascertaining with certainty the sum to be paid, otherwise than by an action at law; for to leave the amount to be paid to be ascertained by an action at law would be utterly subversive of all the recognized rules applicable to taxation.

"When taxes have been properly decided upon, an assessment may become an indispensable proceeding in the establishment of any individual charge against either person or property. This is always requisite when the taxes are to be levied in proportion to an esti-

mate, either of values, or benefits, or the results of business." Cooley on Taxation, 258.

In the case under consideration, the amount to be paid was to be determined by the sworn statement of the chief manager of a company of the entire number of full-rate and less than full-rate messages sent within the given time. This we deem a reasonable and proper method of determining the sum to be paid; a method of which no company could complain; and it is probably true, if a company had failed to cause the proper report of business done to be made, that the state would not be powerless to have it ascertained and enforce its payment.

It was, then, the intention of the state that the amount of tax to be paid should be ascertained in the manner provided by the act, and it cannot be presumed that it was the intention to impose the tax and have its amount, in a given case, ascertained in some other way, when there had been no failure on the part of the person to be taxed to do all that the law required him to do; to have it ascertained in a manner necessarily oppressive, vexatious to the taxpayer, and unknown to the rules regulating taxation where there has been no default in the tax-payer.

It has been determined that certain classes of messages which were embraced in the act under consideration cannot be legally taxed by the state; and these are, as the law required them to be, embraced in the reports made; but the one class is not, and it seems cannot now, be distinguished from the other, either in the report, or from the data kept by the appellant in its offices to enable it to make the report which the law required. Had the legislature understood that the classes of messages now found to be not subject to taxation could not be subjected to taxation, then no doubt the tax on such messages or business as may be taxed would not have been imposed, without providing a method by which the business subject to taxation could be ascertained. Nor can it be presumed, had the legislature well understood the limit of its taxing power in this class of cases, that it would have imposed the same rate of taxation upon its proper subject as was attempted to be imposed on the proper and improper subjects combined.

It is of the utmost importance, for the protection of the tax-payer, that tax laws should be certain, both as to the thing taxed and as to the amount of the tax, and the manner for its ascertainment; that the tax-payer may have an opportunity, without the expense of litigation, to pay such taxes as he may owe; and a tax law which does not accomplish this purpose ought to be held invalid, whether this

results from an attempted exercise of power not possessed, through which the law becomes uncertain by both proper and improper subjects being combined and selected for taxation, or by the failure of the legislature for any other reason to furnish the rules by which taxes may be levied, assessed and collected.

We are of the opinion that the different parts of the act under consideration are so intimately connected that the invalidity of a part of the law renders the entire law invalid. This being true, it becomes unnecessary to consider the questions raised as to the admission of testimony, further than to say that the admission made by the counsel for the appellee, that it was impossible from any evidence now to be had, and so without any neglect of duty by the appellant, to show the actual number of messages sent which could be considered in ascertaining the amount of tax due if the law was valid in part, well illustrates the wisdom of the rule which requires the tax law to fix with certainty the thing to be taxed, the rate or amount of the tax, or the means for ascertaining the latter.

As no action can be maintained on the law relied upon, the judgment of the court below will be reversed and the cause dismissed.

REVERSED AND DISMISSED.

[Opinion delivered December 12, 1884.]]